**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| MICHAEL GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.   2:15cv253-WHA |
| v. | ) |
| | )         (wo) |
| PIKE ROAD VOLUNTEER FIRE | ) |
| PROTECTION AUTHORITY & JANE | ) |
| JAMES, individually, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc. #18) and a

Motion to Strike (Doc. #25) filed by the Defendants, Pike Road Volunteer Fire Protection

Authority ("PRVFPA") and Jane James ("James"), and a Motion to Strike Portions of

Undisputed Facts (Doc. #23).

The Plaintiff, Michael Green ("Green"), filed a Complaint in this case on April 17, 2015,

bringing claims of a violation of the Americans with Disabilities Act (Count I) and a state law

claim of slander against Defendant James (Count II).

For the reasons to be discussed, the Defendants' Motion to Strike is due to be GRANTED

in part and DENIED in part, the Plaintiff's Motion to Strike is due to be DENIED, and the

Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

**II.   SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if there is no genuine issue as to any material fact and . . .

1

the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

Green began working as a volunteer firefighter with the PRVFPA in Pike Road, Alabama in 1996.   In 2001, he was appointed the unpaid volunteer fire chief.   In 2008, he was hired into the newly-created position of Fire Chief of the PRVFPA.

In April 2012, Green took leave from work for neck surgery.   He was prescribed pain medicine, Oxycodone, as a result of his surgery.   Shortly after the surgery, a meeting was called at one of the fire stations to discuss a sexual harassment complaint.   Green was told he did not have to attend the meeting, but he attended it.   He took his prescription medicine and drank alcohol before the meeting.

In January of 2014, Green was arrested for driving under the influence ("DUI").

In February of 2014, James, a Director of the PFVFPA, called a meeting of the three PRVFPA directors.   At this meeting, Green confirmed that he had been arrested for DUI but stated that he had not been driving under the influence of alcohol.   Green states in an affidavit attached to his EEOC charge that Directors James and Jack Jackson ("Jackson") "stated their concern that I might not be able to perform all my duties."   (Doc. #24-3 at ¶11).   When asked by the Board, Green refused to resign his position as Fire Chief.   He was placed on restrictive duties.

In April of 2014, the PRVFPA Board of Directors met in executive session and also discussed in an open meeting Green's future as Fire Chief.   James made statements in the open

meeting about Green, although the exact content of the statements is in dispute. Green takes the

position that James said Green was "pumped up on oxycodone and alcohol." There was an

audio recording of the April 2014 meeting and the recording provided to the court does not

reveal that statement, but does reveal that James said Green had had a second chance because he

had arrived at a meeting on duty while taking Oxycodone and drinking alcohol. Green also

points out that the entire meeting does not appear to have been recorded.

Green presents the deposition testimony of Ty Glassford ("Glassford"), a PRVFPA Board

of Directors member. Glassford describes his disagreement with Jackson and James on whether

Green should be terminated. Glassford testified that Jackson said that he knew Green had

previous situations where he had been drinking on the job and the DUI was the final straw. (Doc.

#24-16 at p.67:14-17). Glassford also states that Jackson was "quite upset that we would

consider letting him continue after he had proof that he had a drinking issue." (Doc. #24-16 at

p.67:21-23).

The PRVFPA Board of Directors voted 2 to 1 to terminate Green. James and Jackson

voted for and Glassford voted against termination. Green contends that he was terminated based

on a perception of alcohol and prescription drug abuse on the part of James and Jackson.

## IV. DISCUSSION

### A. Motions to Strike

The Defendants, PRVFPA and James, have moved to strike unsworn statements, and

statements with defective notarizations, submitted by Green in opposition to the Motion for

Summary Judgment, as inadmissible hearsay. The Defendants argue that the statements of

Andrew Parker, Josh Peacock, Michael Hagans, and Blake Green should not be considered

4

because they are unsworn, and that the affidavits of Phillip Whatley and Michael Kreauter

should not be considered because the notary does not state on the face of the affidavit that the

affiant appeared before the notary in signing the reaffirmation of the signed statement.

Green responds that the statements should be considered under Rule 807 of the Federal

Rules of Evidence and are offered as evidence that James slandered Green at the PRVFPA board

meeting, and that he was terminated because of a perception that he was disabled.   Green also

submits corrected affidavits of Phillip Whatley and Michael Kreauter.   Green having satisfied

the objection to the latter two affidavits, the court will deny the Motion to Strike as to them.

Hearsay can be considered in ruling on a Motion for Summary Judgment if it is reducible

to admissible form at trial. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir.

2012).   Much of what is stated in the objected-to unsworn statements is inadmissible hearsay

within hearsay.   The court will not consider evidence that is not reducible to admissible form at

trial, and the Motion to Strike is due to be GRANTED to that extent.

Green's Motion to Strike is directed to various paragraphs in the Defendants' brief.

Green does not state any grounds for inadmissibility of the targeted paragraphs, however, but

rather states the basis for his disagreement with them.   The court will consider the evidence

under the applicable summary judgment standard, and the Motion to Strike is due to be

DENIED.

### B.   Merits of Federal Claim

Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of

disability by using circumstantial evidence of intent, the court applies the framework first set out

by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973).   Under this framework, the plaintiff must establish a prima facie case of discrimination.

*McDonnell Douglas*, 411 U.S. at 802.   After the plaintiff has established a prima facie case of

discrimination, the burden of production is placed upon the employer to articulate a legitimate

nondiscriminatory reason for its employment action.   *Texas Dep't of Cmty. Affairs v. Burdine*,

450 U.S. 248, 254 (1981).   The plaintiff may seek to demonstrate that the proffered reason was

not the true reason for the employment decision "either directly by persuading the court that a

discriminatory reason more likely motivated the employer or indirectly by showing that the

employer's proffered explanation is unworthy of credence."   *Id.* at 256; *Combs v. Plantation

Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).   A plaintiff's prima facie case, combined with

sufficient evidence to find that the employer's asserted justification is false, may permit the trier

of fact to conclude that the employer unlawfully discriminated.   *Reeves v. Sanderson Plumbing

Prod., Inc.*, 530 U.S. 133, 147 (2000).   That is, even if a plaintiff establishes a prima facie case

and offers sufficient evidence of pretext as to each of the proffered reasons, summary judgment

"will sometimes be available to an employer in such a case."   *Chapman v. AI Transport*, 229

F.3d 1012 (11th Cir. 2000).

To establish a prima facie case of discrimination under the ADA, a plaintiff must show

that (1) he has a disability, (2) he is a qualified individual, (3) he was subjected to unlawful

discrimination because of the disability.   *Holly v. Clairson Indus. LlC*, 492 F.3d 1247, 1255

(11th Cir. 2007).   "Disability" is defined under the ADA as "a physical or mental impairment

that substantially limits one or more major life activities," having a "record of such an

impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C).

With respect to being regarded as disabled, an individual can establish this factor "because of an

actual or perceived physical or mental impairment whether or not the impairment limits or is

perceived to limit a major life activity." 42 U.S.C. § 12102(3).   A person can be considered to

have a "disability" within the statute even if he has no physical or mental impairment as long as

he is treated by an employer as having such an impairment.   28 C.F.R. §1630.2(l).

Green denies that he is disabled by substance abuse but has argued that his alleged

substance abuse is a disability because the PRVFPA perceived that he had such a disability.

The Defendants do not dispute that being regarded as having an alcohol or prescription drug

abuse problem can entitle one to protection under the ADA. *Cf. Roberts v. Rayonier, Inc*., 135 F.

App'x 351 (11th Cir. 2005) (examining evidence about whether employee was regarded as being

disabled by alcohol addiction).   Instead they argue that Green cannot establish a prima facie

case because he cannot show that an employee outside of his protected class was treated more

favorably than he was.   Green argues, however, that he was replaced by Matt Missidine as

PRVFPA Fire Chief, and that there are no allegations of a substance abuse problem against Matt

Missidine. (Doc. #24-12 p.5).   The PRVFPA does not respond to this evidence in its reply brief,

apparently conceding that Green can establish a prima facie case.

The Defendants have set out in their brief as the legitimate, non-discriminatory reasons

for Green's firing that "Green violated a written PRVFPA policy by appearing in public and

being arrested for DUI on January 4, 2014 with a PRVFPA decal prominently displayed on the

side of his vehicle," he was terminated "for violating the Board's policy and causing the

PRVFPA's public reputation to suffer in the opinion of James and Jackson," and because

"Green's failure to inform the Board of his DUI arrest was a violation of the Board's trust in its

Fire Chief."   (Doc. #19 at p.24).   The Defendants, therefore, have identified three reasons in

their initial brief:   1. Green violated PRVFPA policy by being arrested, 2. Green caused

PRVFPA's public reputation to suffer, and 3. the failure to inform the Board of his DUI arrest

was a violation of the Board's trust in the Fire Chief.

In her Declaration, James states that she voted to terminate Green's employment because

"after being previously warned, he violated our trust and the Employee Handbook by engaging

in conduct which led to his DUI arrest which negatively reflected on the reputation of the

PRVFPA and PRVFPA's relationship with other local governmental entities . . . by failing to

inform the Board of his arrest." (Doc. #20-1).   In his Declaration, Jackson states that he voted to

terminate Green's employment because, after being previously warned, he violated their trust

and the employee handbook by engaging in conduct which lead to his DUI arrest and negatively

reflected on the reputation of the PRVFPA and PRVFPA's relationship with other local

governmental entities including the Montgomery County and Tallapoosa County Sheriffs'

Departments.   (Doc. #20-2).   Jackson also states that he never perceived Green's alcohol or

Oxycodone use as an impairment with respect to his position as Fire Chief and assumed he only

used Oxycodone for a short time after his surgery. (Doc. #20-2).

It is Green's position that James and Jackson, the two members of the three-member

PRVFPA Board who voted to terminate him, perceived him to have an alcohol or prescription

drug abuse problem and fired him on that basis.   To create a question of fact as to whether the

reasons articulated for his termination are pretextual, Green does not have to have direct

evidence, but instead can present evidence which calls into question each of the reasons

articulated by the Defendants. *Combs*, 106 F.3d at 1528.

Green has stated in an affidavit that in February of 2014, James and Jackson "stated their

8

concern that [Green] might not be able to perform all of [his] duties." (Doc. #24-3 at ¶11). The third Board member, Glassford, testified in a deposition that Jackson said he wanted to fire Green "[o]ver the allegation of the DUI," and, when Glassford was asked whether there was anything else that Jackson said about terminating Green, he added, "[a]nd that he knew he had had previous issue or situations where he had been drinking on the job. And this was just the final straw." (Doc. #24-16 at p.67 10-17). According to Grassford, Jackson was upset that they "would consider letting him continue after we had proof that he had a drinking issue." (Doc. #24-16 at p.67:21-23).

Green also relies on evidence regarding statements by James at the April 2014 meeting. Green's position is that in a portion of the meeting not captured on the audio recording, James said that Green was hyped up on hydrocodone and alcohol. Much of the supporting evidence he has for that proposition is subject to the Motion to Strike and has not been considered. However, in a substituted affidavit which the court has determined can be considered, Phillip Whatley states that he was present during the PRVFD meeting and heard James say that Green had responded to a call while under the influence of pain medication and alcohol.[1] Michael Kreauter stated that James said at the April 29, 2014 meeting that this was not Chief Green's first incident and that he had made the statement that he was under the influence of oxycodone and alcohol while at a fire department meeting. (Doc. #28-3). Green argues that this evidence reveals that James and Jackson considered the previous time in which Green was using alcohol and pain medicine in deciding to terminate Green, which calls into question their reliance on the

---

[1] Green has cited other evidence subject to the Motion to Strike in support of this argument as well.

DUI arrest.

Finally, Green points out that another firefighter, Blake Green, was arrested for a DUI and that arrest was treated differently because it was a "separate incident." (Doc. #24-16 at p.93:14-23). Little facts have been made known to the court, other than that it is Glassford's deposition testimony that he thought the two men with DUI's were being treated differently and was told by Jackson and James that the DUI's would be handled separately. (Doc. #24-16 at p.93:22-23). At a later point in the proceedings, the difference in treatment, if there was one, may be explained as being based on something other than a perception that Green suffered from a disability. The court, however, cannot reach that conclusion based on the limited record before the court at this point in the case.

In their Reply brief, the Defendants have now taken the position that "the undisputed evidence is that the Board terminated Green for his actions on two distinct occasions in 2012 and 2014 which the Board believed to be of a substance abuse related nature which reflected badly on the reputation of the PRVFPA, in violation of the Board's written policy." (Doc. #26 at p.5). That was not the position taken in the statement of the legitimate, non-discriminatory reasons stated in their initial brief, and it departs from the statements of reasons by James and Jackson in their Declarations. While they noted the previous 2012 incident, referring to the warning Green received, they did not state that it was a violation of trust or the handbook, or that it was a basis for their decision. The fact that the Reply brief recasts the reasons articulated for Green's dismissal in a way that attempts to include the 2012 incident makes it unclear to the court, therefore, what the Defendants contend their legitimate, non-discriminatory reasons for termination are.

Viewing the evidence in a light most favorable to the nonmovant, Glassford's testimony

about Jackson's concerns over Green having a "drinking issue," the unexplained different

treatment of another firefighter arrested for DUI, and Green's testimony that concerns were

expressed by decision makers about his ability to perform his job, combined with the uncertainty

over the Defendants' stated legitimate, non-discriminatory reasons for his termination, leads the

court to conclude that a question of fact has been raised as to whether the Board members who

voted for termination did so because they regarded Green as having an alcohol or prescription

painkiller substance abuse problem.   It may well be that the court will determine, based on a

motion for judgment as a matter of law at trial, or that the jury will decide, that the reasons

offered for Green's termination were not a pretext for firing him based on a perception that he

had a disability in the form of a substance abuse problem. But, at this point in the proceedings,

viewing the facts in a light most favorable to the non-movant, the court cannot make that

determination.   Summary judgment is due to be DENIED as to the ADA claim in Count One.

## C. Merits of State Law Claim

Green brings a slander claim against Defendant James. Slander is a false and defamatory

oral communication of and concerning the plaintiff, communicated to a third person, that

"subject[s] the plaintiff to disgrace, ridicule, odium, or contempt." *Anderton v. Gentry*, 577 So.2d

1261, 1263 (Ala.1991). If the defamatory statement "imputes to the plaintiff an indictable

offense involving infamy or moral turpitude," then it constitutes slander per se and damage is

implied by law. *Id.*; *see also Ponder v. Lake Forest Prop. Owners Ass'n*, No. 2130790, 2015 WL

3935490, at *10 (Ala. Civ. App. June 26, 2015) ("While to constitute slander actionable per se,

there must be an imputation of an indictable offense involving infamy or moral turpitude....").

If the statement is defamatory but does not impute an indictable offense, then it constitutes

slander per quod and is actionable only if the plaintiff pleads and proves special damages. *See*

*Anderton*, 577 So. 2d at 1263.   Special damages are the material harms that are the intended

result or natural consequence of the slanderous statement. *See Shook v. St. Bede Sch.*, 74 F. Supp.

2d 1172, 1180 (M.D. Ala. 1999).

Green brings a slander claim against James based on comments made during the

February 17 and April 29, 2015 PRVFPA Board meetings.   James disputes that the statements

Green attributes to her were made, and also moves for summary judgment on the basis that

statements made during the course of quasi-judicial proceedings are privileged as a matter of law

and not subject to slander actions, citing *Morrison v. Mobile County Board of Educ.*, 495 So. 2d

1086, 1091 (Ala. 1986).   James also argues that Green cannot present evidence of special

damages to support a slander per quod claim.   James states that Green has represented that he

has been elected to various firefighter positions, so he has no special damages.

While Green responds to other grounds for summary judgment asserted by James on this

claim, Green does not present evidence of special damages, or even address the argument that he

must present evidence of special damages.

As stated, under Alabama law, if a challenged statement does not impute an indictable

offense, then it constitutes slander per quod and is actionable only if the plaintiff pleads and

proves special damages. *See Anderton*, 577 So. 2d at 1263.   The statement attributed to James of

use of alcohol and prescription drugs while at a meeting is not an indictable offense.   The court

has been pointed to no evidence in the record of any special damages.   In his Complaint, Green

has pled mental anguish damages, but such damages are not sufficient.   *See Shook*, 74 F. Supp.

12

2d at 1181 (stating "the plaintiffs have neither pled nor offered proof of special damages resulting directly from the allegedly slanderous communication. Shook's claim of emotional distress and anguish does not suffice.").   Summary judgment is, therefore, due to be GRANTED as to the slander claim in Count Two on that basis.

## V. CONCLUSION

The parties appear to be in agreement that the Americans With Disabilities Act treats alcohol or prescription drug addiction as a protected disability, requiring a reasonable accommodation as an alternative to termination, and the dispute in this case raised by the briefs is whether the Defendants regarded Green as having this disability and terminated him for that reason, which is also protected by the Americans With Disabilities Act.   The evidence before the court at this stage of the proceedings presents a genuine issue of material fact as to whether Green was terminated by vote of two of the three Defendant Board members because they perceived him to have a disability.   Therefore, it is hereby ORDERED as follows:

1. The Motion to Strike (Doc. #25) filed by the Defendants is GRANTED in part and DENIED in part.

2. The Motion to Strike Portions of Undisputed Facts (Doc. #23) is DENIED.

3. The Motion for Summary Judgment (Doc. #18) is GRANTED as to the state law claim in Count II and judgment is entered in favor of Jane James and against the Plaintiff on that claim.

4. The Motion for Summary Judgment is DENIED as to Green's claim in Count I for disability discrimination against the Pike Road Volunteer Fire Protection Authority.

Done this 1st day of June, 2016.

13

 /s/ W. Harold Albritton
W.   HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE